UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO PEREZ,<br><br>            Plaintiff,<br><br>     v.<br><br>BRYAN PHI, et al.,<br><br>            Defendants. | Case No. 1:20-cv-01248-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>(ECF NO. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

Antonio Perez ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on September 3, 2020.  (ECF No. 1).

The Court screened the complaint and found that it failed to state any cognizable claims.  (ECF No. 10).  The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state any cognizable claims, and gave Plaintiff leave to file a First Amended Complaint.  (Id.).  The Court also gave Plaintiff the option of standing on his complaint, subject to the Court issuing findings and recommendations to a district judge recommending dismissal of the action consistent with the screening order.  (Id. at 11).

On November 30, 2020, Plaintiff filed a notice stating that he wants to stand on his

complaint. (ECF No. 11).[1]

Accordingly, for the reasons set forth below, the Court recommends that this action be dismissed for failure to state a claim.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d

---

[1] The Court notes that, as Plaintiff has not amended his complaint, the Court will not consider any factual allegations that are not included in Plaintiff's complaint.  The Court also notes that Plaintiff does not need additional time to gather evidence to prove his allegations.  For purposes of this screening order, Plaintiff's factual allegations are taken as true.

2

677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

**II.     SUMMARY OF PLAINTIFF'S COMPLAINT**

Plaintiff alleges as follows in his complaint:

In about 2017, Plaintiff was housed at Centinela State Prison.  Plaintiff began having symptoms of dizziness and constant headaches.  Plaintiff submitted multiple California Department of Corrections and Rehabilitation 7362 Health Care Service Request Forms, requesting medical attention for his frequent headaches and dizziness.  Defendant nurse Mendivil and defendant nurse Tabarez on separate occasions acted with deliberate indifference and neglected to properly examine Plaintiff.

Plaintiff informed Defendants about his history of having seizures.  Plaintiff continued to suffer with painful headaches.  He continued submitting Health Care Service Request Forms.  Defendant nurses finally requested that Plaintiff be seen by the prison doctor, defendant Phi.

Plaintiff explained his daily ongoing symptoms of extreme headaches and dizziness, and also explained his history of seizures.  Plaintiff requested x-ray and MRI scans for his head.  Plaintiff was ignored.  Defendant Phi instead referred Plaintiff to see mental health and to be examined by a psychologist.

Defendant psychologist Mills and defendant Phi simply diagnosed Plaintiff with anxiety and obsessive-compulsive disorder.  Plaintiff pleaded with Defendants to order an x-ray or an MRI, but Plaintiff was again ignored.

Defendants made Plaintiff feel as if he were crazy.  Plaintiff still suffers from painful headaches and dizziness.

In 2018 Plaintiff was transferred to Corcoran State Prison.  Plaintiff continued to submit Health Care Service Request Forms, requesting to be examined.  Plaintiff was still suffering from headaches and dizziness.

3

Plaintiff was seen by defendant doctor Joelson, and explained the symptoms of headaches and dizziness, and his history of seizures. Plaintiff also explained that medical staff at Centinela State Prison ignored his needs. Plaintiff requested an x-ray or an MRI, but his request was denied. Instead, Plaintiff was referred to see a neurologist.

Plaintiff asked defendant Doe neurologist for a brain scan, but his request was denied, despite Plaintiff explaining his history of seizures, headaches, and dizziness.

Plaintiff continued to suffer the same symptoms and continued to plead to medical staff defendants to receive proper medical care. Instead, defendant Joelson would ask Plaintiff if it could be anxiety or obsessive-compulsive disorder.

Plaintiff continued to see defendant Joelson, and on about August 26, 2019, after pleading, a CT Scan was ordered. The scan showed a large likely arachnoid cyst up to six cm. Defendant Joelson gave Plaintiff the bad news and stated he would order an MRI.

The September 2019 results showed a large arachnoid cyst with the left middle crania fossa. Plaintiff was seen by a neurologist and was asked if he wanted surgery, but the neurologist explained that there was a 50/50 chance the after results would not be positive. Plaintiff was scared and asked if he could receive a second opinion. The neurologist stated that Plaintiff would receive the same outcome.

On December 11, 2019, Plaintiff filed a 602 health care grievance stating all the years of medical staff negligence and deliberate indifference to his serious medical needs and that he is still requesting outside prison medical attention.

On February 4, 2020, Plaintiff was interviewed by defendant Ybarra. Plaintiff was asked why he refused surgery. Plaintiff stated that the neurologist stated it is a 50/50 chance he would not be the same. Defendant Ybarra did not allow Plaintiff to get a second opinion. Defendants Ybarra, Bell, and Ballay all signed off on the grievance.

On February 12, 2020, Plaintiff resubmitted the grievance because he was dissatisfied with Defendants' failure to provide proper medical treatment for all the years of pain and suffering. Plaintiff further stated in the grievance that medical staff defendants failed to act to prevent the cyst from enlarging.

On April 30, 2020, Plaintiff was entitled to request the service of an outside consultant by following the directions in the California Code of Regulations.  Also, the decision exhausted Plaintiff's administrative remedies.

### III.   ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of

1  causation "closely resembles the standard 'foreseeability' formulation of proximate cause."
2  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City
3  of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

4       A plaintiff must demonstrate that each named defendant personally participated in the
5  deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual
6  connection or link between the actions of the defendants and the deprivation alleged to have
7  been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S.
8  658, 691, 695 (1978).

9       Supervisory personnel are not liable under section 1983 for the actions of their
10  employees under a theory of *respondeat superior* and, therefore, when a named defendant
11  holds a supervisory position, the causal link between the supervisory defendant and the claimed
12  constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v.
13  Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.
14  1978). To state a claim for relief under section 1983 based on a theory of supervisory liability,
15  a plaintiff must allege some facts that would support a claim that the supervisory defendants
16  either: were personally involved in the alleged deprivation of constitutional rights, Hansen v.
17  Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent
18  them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed]
19  a policy so deficient that the policy itself is a repudiation of constitutional rights and is the
20  moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal
21  quotation marks omitted).

22       For instance, a supervisor may be liable for his or her "own culpable action or inaction
23  in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence
24  in the constitutional deprivations of which the complaint is made," or "conduct that showed a
25  reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d
26  630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).
27  \\\
28  \\\

### B. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a

"plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Based on Plaintiff's allegations of dizziness and constant painful headaches, the Court finds that Plaintiff has sufficiently alleged that he had a serious medical need. However, Plaintiff has not sufficiently alleged that any defendant knew that he had a serious medical need but failed to address that need.

Plaintiff first complains that defendants Mendivil and Tabarez failed to "properly" examine him. However, this is a conclusory allegation, and Plaintiff provides no details regarding these examinations. Accordingly, Plaintiff has failed to sufficiently allege that these defendants knew that he had a serious medical need but failed to address that need. Thus, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against defendants Mendivil and Tabarez.

As to defendant Phi and defendant Mills, defendant Phi referred Plaintiff to a psychologist (defendant Mills). Both defendant Phi and defendant Mills diagnosed Plaintiff with anxiety and obsessive-compulsive disorder. While Plaintiff pleaded for an x-ray or an MRI, and while Plaintiff may have actually needed an x-ray or MRI, there are no allegations suggesting that these defendants knew that Plaintiff needed additional treatment but failed to provide it. Instead, at most, Plaintiff has alleged that these defendants were negligent in diagnosing Plaintiff, and negligence alone is not enough to state a constitutional violation. Thus, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against defendants Phi and Mills.

As to defendant Joelson, defendant Joelson referred Plaintiff to see a neurologist. He would also ask Plaintiff if his symptoms could be the result of anxiety or obsessive-compulsive disorder, and eventually ordered a CT scan for Plaintiff. There are no allegations suggesting that defendant Joelson knew that Plaintiff needed additional treatment but failed to provide it. While defendant Joelson could have ordered the CT scan earlier, and perhaps should have, Plaintiff has at most alleged that defendant Joelson's failure to do so was negligent, which is not enough to state a constitutional violation. Thus, Plaintiff has failed to state an Eighth

Amendment deliberate indifference claim against defendant Joelson.

As to the Doe neurologist, Plaintiff's only allegation appears to be that he requested a brain scan and that his request was denied, despite explaining his history of seizures, headaches, and dizziness to the Doe neurologist.[2] However, there is no indication that the Doe neurologist subjectively knew that Plaintiff had a serious medical need for a brain scan. In fact, Plaintiff provides very few factual allegations regarding what occurred at his appointment with the Doe neurologist. Thus, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against the Doe neurologist.

As to Plaintiff's claim against defendants Ybarra, Bell, and Ballay, Plaintiff's only allegation against these defendants appears to be that they denied his grievance requesting a second opinion. Plaintiff asked a neurologist if he could receive a second opinion, and the neurologist stated that Plaintiff would receive the same outcome. Plaintiff then filed a grievance regarding this issue (and other issues), and his grievance was denied by defendants Ybarra, Bell, and Ballay. As Plaintiff has alleged a difference of opinion between himself and his neurologist regarding his need for a second opinion, and as a difference of opinion between an inmate and medical personnel is not enough to establish a deliberate indifference claim, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against defendants Ybarra, Bell, and Ballay.

As to Plaintiff's claim against defendant Duenas, there are no factual allegations in the complaint regarding defendant Duenas's conduct. As there are no factual allegations linking defendant Duenas to the violations alleged in the complaint, Plaintiff has failed to state an Eighth Amendment deliberate indifference against defendant Duenas.

\\\

\\\

---

[2] It is not clear if the Doe neurologist is the same neurologist who saw Plaintiff in September of 2019. Even if he or she was, there are no facts alleged suggesting that the neurologist who saw Plaintiff in September of 2019 and asked Plaintiff if he wanted surgery was deliberately indifferent to Plaintiff's serious medical needs. To the extent Plaintiff is suing this neurologist for not allowing Plaintiff to get a second opinion, as discussed above in regards to defendants Ybarra, Bell, and Ballay, this is at most a difference of opinion between an inmate and medical personnel, which is not enough to establish a deliberate indifference claim.

**C. State Law Claim**

California's Government Claims Act[3] requires that a claim against the State[4] or its employees "relating to a cause of action for death or for injury to person" be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2.  Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245 (Cal. 2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act.  Bodde, 32 Cal.4th at 1245; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

It is not clear, but it appears that Plaintiff may be attempting to bring a state law claim for negligence.  However, Plaintiff has failed to state a negligence claim because he has not pled compliance with California's Government Claims Act.

**IV.   CONCLUSION, RECOMMENDATIONS, AND ORDER**

The Court has screened Plaintiff's complaint and finds that it fails to state any cognizable claims.  The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file a First Amended Complaint, but Plaintiff chose to stand on his complaint.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district

---

[3] This Act was formerly known as the California Tort Claims Act.  City of Stockton v. Superior Court, 42 Cal. 4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

[4] "'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller."  Cal. Gov't Code § 900.6.

judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

      Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:   **December 1, 2020**                    /s/ Erica P. Grosjean
                                                      UNITED STATES MAGISTRATE JUDGE